IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 4:18-cr-00012
)
MONTEZ LAMAR ALLEN )

DEFENDANT'S SECOND MOTION TO DENY THE UNITED STATES' MOTION
AND REQUEST FOR HEARING ON THE ISSUE

COMES NOW, the Defendant, Montez Lamar Allen, by counsel, and files this second motion to deny the Government's Emergency Motion to Limit Disclosure of Identifying Information Outside Defense Teams in this case, and in support thereof states:

1. Defense counsel decided to file this second motion in response to the court's email to counsel dated December 05, 2018. Counsel believes the court intends to grant the Government's motion without a hearing, and wishes to provide specific arguments against doing so, as well an alternative course of action.

2. In its motion, the Government justifies its disclosure restriction request on the shooting death of one of their witnesses, Dwight Montel Harris, who was from Danville, Virginia, and who was found shot to death on a street in Danville on October 23, 2018. According to the Government's own evidence, Harris was a dangerous, armed criminal who may have been a member of a drug dealing street gang referred to as the "Philly Boys". Also according to the Government's own evidence, the charges related to the June 15, 2016 shooting set forth in the indictment were based, in part, on Harris' belief that some females stole illegal drugs from him so he and Armonti Womac (the two listed as the victims) armed with handguns and bad intentions went to find the females and the illegal drugs and engaged in a shootout in a residential neighborhood which resulted in part of co-defendant Tanasia Lashae Coleman's pinky finger being

shot off, Womack being shot multiple times, and considerable property damage.

3. This is significant because it appears the Government knew their witness was a violent drug dealer and he was still at liberty and active in the Danville community. The Government claims Harris was "lured" to the area to be murdered. Though they have produced no evidence to prove that allegation, it may be true. It is inarguable that the career choice of being a dangerous, armed criminal drug dealer carries with it the likelihood of being murdered. That fact alone undermines the Government's claim that Harris was murdered because he was a Government witness in this specific case. Moreover, there are many reasons people get murdered that have nothing to do with a court case: a personal slight, adultery, failure to pay a debt, a drunken brawl, etc. All of these have been and will continue to be reasons given for a homicide. But, to justify the Government's extraordinary demand, it must show a strong factual link between the alleged murder of Harris and the defendants in this case: An unsupported claim and a redacted hand-written note cannot suffice.

4. One important fact the government failed to reveal to the Court, and which is readily apparent to defense counsel, is that the community where the defendants come from in Danville is small, close-knit and almost exclusively African-American. Many of the defendants have known each other from childhood. Many of the defendant's families know one another. It is safe to assume that many, if not most, of the prosecution witnesses come from the same community in Danville. It is safe to assume that many, if not most, of the defendants and their families know the prosecution witnesses. This statement is supported by the fact the Government did not release discovery #5 (the material including witness names and Grand Jury testimony) until only a few days ago. Thus, it is highly likely the community already knows who the Government's witnesses are. But the most important issue, which counsel cannot stress more, is that in order to

assess whether a prosecution witness has a reputation for dishonesty in the community (or on this case the specific neighborhood), counsel must identify that person by name. In order to assess whether a prosecution witness bears a grudge against a defendant, or maintains any other form of bias, defense counsel must identify that person by name. How else is counsel supposed to assess the credibility of witnesses in the community and neighborhoods, if we can't even name them? And how is counsel to respond to any person who asks why are we asking about this person? Or, who is the person you are asking about? The practical effect of the Government's motion will be to hamstring all the defense teams' efforts to properly investigate their cases.

5. Finally, defense counsel believes there is a fundamental unfairness wherein the most powerful party in an adversarial proceeding can ask and require the other weaker party to be prohibited from using important available information in its most basis investigative tasks. There should be a hearing on this issue where the Government produces substantial and convincing evidence to prove its claim and justify limiting all the defense teams' ability to investigate. Moreover, once the difficulty such an extraordinary order will cause becomes obvious, all defense counsel, individually or collectively, should have the ability to return to court and demand the restriction be eliminated.

Defense counsel suggests the court enter a temporary order similar to what the Government requests, and then set a hearing date and require the Government to present competent evidence that supports its claims and fully justify the extraordinary relief it seeks. Counsel asks that such a hearing be an adversarial hearing where the Government is required to produce witnesses and other admissible evidence to support is claims. This counsel will object to any proffer by the Government to justify the relief they seek herein.

WHEREFORE, Defendant, Montez Lamar Allen, respectfully moves the Court to deny the

United States' motion, and, should the court decide to enter an order on Friday as it indicated it would, Defendant moves the court to enter only a temporary order and renews its request for a full hearing on the issue at which the United States must produce witnesses to testify in support of its claims prior to the Court entering this extraordinary order, and for any other relief deemed appropriate by the court.

**MONTEZ LAMAR ALLEN**

s/Seth C. Weston
By: Seth C. Weston, Esq.
Counsel for Montez Lamar Allen

Seth C. Weston, Esq.
Law Office of Seth C. Weston, PLC
313 Campbell Avenue SW
Roanoke, Virginia 24016
(O) (540) 342-5608
(F) (540) 301-2209
seth@scwestonlaw.com
Bar # 47523

Neil A. Horn Esq.
The Law Office of Neil Horn, P.C.
321 Campbell Avenue, SW
Unit C2
Roanoke Virginia 24016
(O) (540) 761-2280
(F) (540) 345-1663
neilhornlaw@verizon.net
Bar # 41555
    Counsel for Montez Lamar Allen

Certificate of Service

I hereby certify that I electronically filed this motion on December 06, 2018, with the Clerk of the Court using the CM-ECMF system, which will electronically notice all counsel of record.

s/ Seth C. Weston
Counsel for Defendant