IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:18-cr-00012 |
| | ) | |
| MONTEZ LAMAR ALLEN | ) | |

# DEFENDANT'S FIRST MOTION FOR THE TENDER OF SPECIFIC **BRADY** MATERIAL

# INTRODUCTION

In the case at bar the Defendant is charged with participating in a gang related racketeering conspiracy, selling marijuana as part of that conspiracy, and committing murder and attempted murder. (Doc. No. 5) The Government's case against the Defendant, to a significant extent, depends on the testimony of certain co-defendants in the indictment. The Government's evidence at trial will likely include testimony from those selected co-defendants. If this prediction is true, then defense counsel is obliged to confront and impeachment those witnesses during cross-examination. And, effective confrontation can only be guaranteed by counsel investigating and gathering all the information they can about those witnesses. As a consequence, any knowledge on the part of the prosecutors that those witnesses gave inconsistent statements, lied, failed to provide complete and accurate information, or were offered reward in exchange for their testimony, is exculpatory under our Law and must be provided to defense counsel. One of those likely co-defendant Government witnesses is Tanashia Coleman.

The Defendant, pursuant to his rights under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, seeks tender of all information in the possession of the Government, including its investigatory agencies, Federal and state, to enable his attorneys to present any and all evidence and information concerning 1.) any prior inconsistent statements made by Ms. Coleman to any investigating law enforcement officer or the prosecutors responsible for this case; 2.) any offer of reward or benefit made to Ms. Coleman, whether express or implied, in exchange for her cooperation and testimony, and 3.) any other information or material in the possession of the prosecution or its agents, which could be used to impeach Ms. Coleman if she chooses to testify.

## MOTION

COMES NOW, the Defendant, Montez Lamar Allen, by his counsel, and files this, his First Motion for the Tender of Specific Brady Materials, and pursuant to the Due Process Clause of the United States Constitution and the opinions in Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Kyles v. Whitley, 514 U.S. 419 (1995), and United States v. Bagley, 473 U.S. 667 (1985), moves for an order directing the Government to tender for inspection and copying any evidence known to be within the possession of the Government or any law enforcement agency, either participating in the investigation and/or presentation of the evidence of guilt of the accused or which is otherwise identified in this pleading or which would become known through the exercise of reasonable inspection and investigation: (1) which might tend to negate the guilt of the Defendant, (2) which could mitigate his punishment; or (3) which could be used to impeach any government witness.

Tanasia Coleman is a co-defendant. Defense counsel believes the Government will call her as a witness against their client, Mr. Allen, and other co-defendants. Ms. Coleman has been

untruthful in the past and has provided inconsistent statements to the police and the

Government's attorneys. For example:

A. In Discovery Production 4, at Invendica ID No. 133557, USAO-008703, when questioned by the Danville Police Department on the night of Christopher Motley's murder, August 20, 2016, Coleman stated she didn't see anything;

B. In Discovery Production 7, at Invendica ID No. 189510, USAO-018486, Tanasia Coleman was called to testify before the grand jury. On page 98 she admits to lying about what she knew. It is also of note the Assistant United States Attorney questioning Coleman states "we spoke on other **occasions**". (emphasis added). This suggests the Government's attorney was aware of Coleman's dishonesty, has met with her on prior occasions and likely has notes detailing those meetings;

C. In the same grand jury transcript on page 152, USAO-018637, Coleman again admits she lied to the police in order to protect other gang members;

D. In the same grand jury transcript on page 168, USAO-018653, Coleman again admits lying to FBI agents;

E. In the same grand jury transcript on page 169, USAO-018654, Coleman again admits lying to the Danville Police Department and the Assistant United States Attorney. Again, it should be noted the Assistant United States Attorney questioning Coleman states "We **talked** about one of those **occasions**". (emphasis added). Again, suggesting notes of those prior meetings exist;

Ms. Coleman also expects a reward for her testimony and cooperation:

A. In the same grand jury transcript on page 170, USAO-018655, Coleman tells the grand jury she hopes to be rewarded in her case;

B. In the same grand jury transcript on page 174, USAO-018659, Coleman again tells the grand jury she expects the prosecutor will give her a benefit at sentencing;

C. Ms. Coleman entered a plea agreement, Document number 188, which includes the possibility of substantial assistance (see page 3);

And, finally it appears Ms. Coleman already reaped some benefit by cooperating with the Government:

A. Even though she admitted to lying to the police, both state and Federal, Coleman was not charged with Making a False Statement to Police under Virginia Code Section 18.2-461 and was not charged with Making a False Statement to a Federal Agent under 18 U.S.C. §1001.

Counsel for the Defendant believes all of Ms. Coleman's statements, whether written or recorded, must be provided for inspection and copying, in a timely fashion. This includes, but is not limited to, hand-written notes produced by the investigating officers, any audio or video recordings produced by the investigating officers, and any notes and/or work product produced by the prosecuting attorneys detailing Ms. Coleman's statements. The prosecuting attorneys should also state how many occasions he or she met with Ms. Coleman and provide all their notes detailing those meetings. This request for attorney notes and work product is reinforced by the Jencks Act (18 U.S.C. §3500). Though not the same as a specific Brady request, the Act still requires the prosecutors to turn over any of their notes relating to the subject matter of the testimony of a Government witness that has been "signed or otherwise adopted or approved" by that witness and it is not rendered non-producible because a Government lawyer interviews the witness and writes the statement." Goldberg v. United States, 425 U.S. 94, 98 (1976). Unlike the Jencks Act, however, Defense counsel believes that under Brady and its progeny, the prosecutor's notes and other work product are subject to disclosure *now* and should not be delayed until after Ms. Coleman testifies. This timely disclosure request includes all the suggested materials listed above.

In addition to statements and work product, the Defendant demands the Government reveal any promises made to Ms. Coleman in exchange for her testimony, whether they are express, implied or contingent on certain actions. The fact that Ms. Coleman signed a written plea agreement lends credence to counsel's belief she hopes to gain benefit for her testimony, but is not sufficient to satisfy the requirements of Brady and its progeny. The Government's production must include all documents, notes or recordings or other material detailing the

promises made to her, any statement made to instill a hope of leniency in exchange for testimony, or any type of quid pro quo whether written or verbal.

The Defendant's demand extends not just to the prosecuting attorneys but to any of their agents that possess the materials identified and requested above, and is not limited to the tender of admissible evidence. The Defense team will investigate any partially developed leads relating to any of the information requested above.

This Motion is continuing in nature.

WHEREFORE, the defendant, Montez Lamar Allen, moves that the specific relief requested in the foregoing Motion be granted.

**MONTEZ LAMAR ALLEN**

s/Neil Horn
By: Neil Horn, Esq.
Counsel for Montez Lamar Allen

Neil A. Horn Esq.
The Law Office of Neil Horn, P.C.
321 Campbell Avenue, SW
Unit C2
Roanoke Virginia 24016
(O) (540) 761-2280
(F) (540) 345-1663
neilhornlaw@verizon.net
Bar # 41555

Seth C. Weston, Esq.
Law Office of Seth C. Weston, PLC
313 Campbell Avenue SW
Roanoke, Virginia 24016
(O) (540) 342-5608
(F) (540) 301-2209
seth@scwestonlaw.com
Bar # 47523
Counsel for Montez Lamar Allen

<u>Certificate of Service</u>

I hereby certify that I electronically filed this motion on April 4, 2018, with the Clerk of

the Court using the CM-ECMF system, which will electronically notice all counsel of record.

<u>s/ Neil Horn</u>
Counsel for Defendant
