IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 4:18-cr-00012 |
| | ) | |
| JAVONTAY HOLLAND | ) | |
| | ) | |

**UNITED STATES' OPPOSITION TO USE OF DANVILLE *VENIRE***

The United States of America respectfully opposes defendant Javontay Holland's Motion to Empanel a Danville Division Venire. ECF Nos. 288-89. As the United States asserts in its own Motion Regarding Jury Composition (ECF No. 279) ("Jury Motion"), a Roanoke *venire* should be used in a lengthy case tried in the Roanoke federal courthouse in order to ensure a fair and impartial jury. As grounds for this opposition, the United States asserts the following:

1. Using a Danville Division jury in the Roanoke federal courthouse for seven weeks would create a hardship on jurors. The United States concedes that it has no physical "evidence" of this other than plain logic and past experiences. As detailed in its Jury Motion, some jurors would be forced into a lengthy commute day-after-day for several weeks.[1] Jurors with long commutes could be on the road for upwards of four hours per day, in addition to sitting at trial for

---

1 The median household income in Danville (as of 2017) is $34, 951. A quarter of the population lives in poverty, which is 10 percent higher than the national average. *See* https://www.census.gov/quickfacts/fact/table/danvillecityvirginiacounty#; https://www.census.gov/newsroom/press-releases/2018/2013-2017-acs-5year.html The issue of transportation is so extreme in this community, the United States had to expend significant funds arranging transportation for witnesses to/from the grand jury throughout the investigation.

1

eight or nine hours each day. The Court could shorten the trial day to accommodate these commutes, but that solution would increase the length of trial, exacerbating the issue.

    2.      The defendant suggests sequestering the jurors to eliminate any transportation and commute issues, but this also raises its own substantial issues. As court after court has long recognized, jury sequestration is an extreme option to be used rarely. *E.g., Drake v. Clark*, 14 F.3d 351, 358 (7th Cir. 1994). This is because sequestration not only is costly but, more importantly, it narrows the potential jurors available for service. *Mastrian v. McManus*, 554 F.2d 813, 818–19 (8th Cir. 1977) ("The procedure of sequestration is one of the most burdensome tools of the many available to assure a fair trial. It necessarily narrows the cross section from which a jury is drawn by eliminating those persons for whom a lockup would be prohibitive."); *United States v. Savage*, No. CRIM.A. 07-550, 2012 WL 4068341, at *4 (E.D. Pa. Sept. 14, 2012) (denying sequestration motion because of hardship on jury); *United States v. Taylor*, No. 1:04-CR-160, 2006 WL 3359281, at *1 (E.D. Tenn. Nov. 16, 2006) ("Sequestration of a jury works a hardship upon those selected to serve as jurors and also reduces the number of potential jurors. . . For this reason a trial judge should decide to sequester a jury only as a last resort."); *In re NBC Universal, Inc.,* 426 F. Supp. 2d 49, 58 (E.D.N.Y. 2006) ("Sequestration of the jury is undesirable. It is costly, makes selecting jurors extremely difficult, and places heavy burdens on jurors that should be avoided."); *United States v. Napolitano*, 552 F. Supp. 465, 485 (S.D.N.Y. 1982) ("Given the anticipated length of the trial (six weeks) during the summer months and the burdens on jurors and their families during sequestration as well as the difficulty inherent in obtaining a fair cross-section of the community, I conclude that the expected publicity does not warrant sequestration."); *United States v. Boffa*, 513 F. Supp. 444, 493 (D. Del. 1980) ("The trial is estimated to last five to

six weeks and it must be recognized that sequestration subjects jurors and their families to burdensome hardships and makes it extremely difficult to obtain a fair cross-section of the community to serve on the jury. Therefore, sequestration should not be ordered unless it appears to be strictly necessary to prevent outside interference.") (citation omitted).[2] In fact, the United States could find no case law in which the extreme option of sequestration was ordered or even considered as a trial tool to alleviate a jurors' commuting times.

3. In recognition of the significant request the defendant is making, he cites to no legal authority supporting the use of a Danville Division *venire* for a lengthy trial in a different division,[3] whereas other jurisdictions who have faced this issue find it appropriate to use the *venire* associated with the division in which the trial is held. *See, e.g., United States v. Garcia*, 674 F. App'x 585, 587 (8th Cir. 2016); *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999); *United States v. Baker*, 98 F.3d 330, 337 (8th Cir. 1996) ("There is no statutory or constitutional right to a jury drawn either from the entire judicial district or from the division in which the offense occurred."); *United States v. Grisham*, 63 F.3d 1074, 1080 (11th Cir. 1995); *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 4792598, at *10 (D.N.M. Sept. 15, 2014); *United States v. Taylor*, 316 F.

---

[2] Legal scholars have also recognized the erosion to a fair and impartial jury that sequestration presents. The issue of sequestration is discussed in Mary Strauss's article *Sequestration*, 24 Am. J.Crim. L. 63 (1996). There, Strauss examines the costs and benefits of sequestration generally and also in the context of the nine-month O.J. Simpson trial. Aside from the great financial costs of sequestration, Strauss discusses the significant psychological effects of long-term sequestration, as well as the threat it poses to the judicial process. Among those dangers are: (1) the possibility of impaneling a non-representative jury; (2) a jury's "rush to judgment" during deliberations; and (3) unfair alignment with one side. *Id.* at 106–16.

[3] In his motion, the defendant refers to trial in *United States v. Mathis*, case no. 3:14-cr-16. In that case, after a mistrial before a Charlottesville jury, Judge Conrad ordered trial at the Roanoke courthouse, using a Roanoke Division jury. Order, ECF No. 546. The United States could only find one WDVA case in recent memory where a jury from a different division was used at another courthouse within the district. In *United States v. Bodkins et al.*, the Court sat in Lynchburg but employed a Danville Division jury. Case no. 4:04-cr-70083. There, it took Judge Conrad a week to empanel a jury for a trial that lasted less than two weeks. *Id.*

3

Supp. 2d 722, 729 (N.D. Ind. 2004); *United States v. Conant*, 116 F. Supp. 2d 1015, 1027 (E.D. Wis. 2000).

    4.     Finally, despite the statements otherwise in defendant's motion, the United States does not advocate for a change of venue, which has not occurred here, nor believes the level of media coverage warrants jury sequestration. However, there has been extensive press coverage of this case in the Danville Division area, including publishing the Indictment, plea agreements, statements of facts from co-conspirators – and even of the government's Jury Motion. *See, e.g.,*

https://www.godanriver.com/news/local/federal-prosecutors-seek-jury-of-roanoke-residents-in-danville-gang/article_4d336764-565e-11e9-8dda-6fc679aea3a7.html;

https://www.godanriver.com/news/danville/latest-plea-shows-danville-gang-had-standing-orders-to-kill/article_f858a3ec-501a-11e9-aca8-c7acc435b6bc.html;

https://www.godanriver.com/news/danville/gangs-meet-a-day-before-bullets-fly-in-deadly-shooting/article_8964c7d6-4b5b-11e9-b4ff-cf78548a4378.html;

https://www.godanriver.com/news/danville/plea-deal-defendant-claims-he-witnessed-event-that-precipitated-ignited/article_75288786-4457-11e9-a423-13bb168dd71a.html;

https://www.godanriver.com/news/danville/tuesday-s-guilty-plea-in-federal-gang-case-stands-apart/article_e0506224-2d8a-11e9-8711-37e4c722fc69.html;

https://www.godanriver.com/news/danville/lead-defendant-pleads-guilty-documents-detail-deadly-ambush-style-shooting/article_fce0dc8e-299d-11e9-9d19-532afcdedeee.html;

https://www.godanriver.com/news/danville/judge-denies-prosecutors-emergency-motion-in-federal-case-hearings-possible/article_03bd4e44-ff36-11e8-b776-a335277833c3.html;

https://www.godanriver.com/news/danville/legal-wrangling-continues-on-naming-witnesses-in-federal-racketeering-case/article_737d65d0-f9b3-11e8-9207-dbe56b4707a8.html;

https://www.godanriver.com/news/danville/court-document-victim-in-federal-indictment-lured-to-heart-of/article_ffc939be-f81f-11e8-8607-e702e57be734.html; https://www.godanriver.com/news/danville/trial-date-in-gang-case-to-be-announced-next-week/article_2f2689d4-f431-11e8-99a5-db5b10f1e520.html; http://www.godanriver.com/news/federal-indictment-street-gangs-behind-homicide-drug-trafficking-in-danville/article_c70e5e04-6ffa-11e8-926e-cf2e28934401.html. Such coverage has also included an editorial critical of the location of the trial and its hearings to date, which hinders the Unites States' ability to find jurors not predisposed against it. https://www.godanriver.com/opinion/editorials/justice-for-and-in-our-community/article_c227cd18-4690-11e9-aded-87ec3b247451.html. Employing a Roanoke Division *venire* would help ameliorate these typical juror biases and preconceived judgments.

The use of a Roanoke Division *venire* solves the "commute" and "sequestration" issues and best ensures that the defendants have a fair and impartial jury.

WHEREFORE, the United States respectfully requests that defendant Javontay Holland's Motion to Empanel a Danville Division Venire be DENIED.[4]

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

s/Heather L. Carlton
Ronald M. Huber, VSB No. 31135
Heather L. Carlton, VSB No. 84752
Assistant United States Attorneys
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902

---

[4] A day after the filing deadline for these motions, Defendant Montez Lamar Allen filed a Motion to Join the Motion for a Jury Questionnaire and to Impanel a Danville Division Venire. ECF No. 290. The defendant's motion is untimely. To the extent the motion is before the Court, the United States requests that it be denied for the same reasons contained in this opposition.

Tel: 434.293.4283
Heather.carlton@usdoj.gov
Ron.huber@usdoj.gov

DATE: April 12, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing opposition has been electronically filed with the Clerk by CM/ECF system which will send notification of such filing to all counsel for the Defendants, on this 12th day of April 2019.

s/Heather L. Carlton
Assistant United States Attorney