IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:18-cr-00012 |
| | ) | |
| JERMAY ANTONIO SMITH, JR. | ) | |

## UNITED STATES' OPPOSITION TO MOTION AND PROPOSED QUESTIONNAIRE

The United States respectfully opposes defendant Jermay Antonio Smith, Jr.'s ("Smith") Motion and Proposed Juror Questionnaire ("Motion"). ECF Nos. 281, 281-1.[1] Smith seeks the use of an expansive Jury Questionnaire at trial and submits a proposed version. *Id.* For reasons more fully set forth in our previously filed Motion to Dispose of the Use of a Jury Questionnaire, or in the Alternative, to Employ the Use of a Limited Jury Questionnaire, the United States submits the use of an expansive jury questionnaire is unnecessary. ECF No. 384. For purposes of this response, the United States would incorporate the authority and arguments in its previous filing (ECF No. 384) as if fully set forth herein.

In his motion, Smith has proposed the use of a number of specific questions he would like included on any Jury Questionnaire. The United States has not previously addressed these specific questions and will do so in this response. For the reasons set forth below, the United

---

[1] A day after the filing deadline for these motions, defendant Montez Lamar Allen filed a Motion to Join the Motion for a Jury Questionnaire and to Empanel a Danville Division Venire. ECF No. 290. The defendant's motion is untimely. To the extent the motion is before the Court, the United States requests that it be denied for the same reasons contained in this opposition.

1

States opposes the use of questions relating to race and religion and seeks direction from the Court regarding the access to potential jurors' social media accounts.

## Factual and Procedural Background

The United States alleges that, in the summer of 2016, members of the Milla Bloods street gang and the Rollin 60s Crips street gang "tied the flag" in order to facilitate their criminal activities in the Danville, Virginia area.[2] Such concerted action allegedly included the attempted murders of the "Philly Boys" at North Hills Court on June 15, 2016, and the later attempted murder of Justion Wilson and murder of Christopher Motley at North Hills Court on August 20, 2016. The "tying of the flags" was also discussed at a meeting on the day of or in the days immediately before the Motley murder, at the residence of the "Big Homie" for the Rollin 60s Crips.

In addition, the United States has accused two Rollin 60s Crips gang members of attempting to tamper with and intimidate witnesses. Another gang member is also alleged to have lied to a federal Grand Jury sitting in the district.

On June 11, 2018, a federal Grand Jury indicted members of the Rollin 60s Crips street gang, the Milla Bloods street gang, and gang associates on violations of Title 18, United States Code, Section 1962 (Racketeer Influenced and Corrupt Organizations Act); Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering), and a variety of other charges, including obstruction-related offenses. These cases are captioned *United States v. Davis*, 4:18-cr-11, and *United States v. Anthony et al.*, 4:18-cr-12. The Grand Jury issued a First Superseding Indictment in *United States v. Davis et al*, 4:18-cr-11, on November 6, 2018.

---

[2]   "Tied the flag" is a gang expression for uniting or conspiring together.

Of significance to this response, all of the victims of the crimes which are the subject of the substantive counts of both indictments are African-American, all of the defendants charged in the two indictments are African-Americans, and much of the crime committed by the Rollin 60s and Milla Bloods occurred in low-income, predominately African-American neighborhoods.

## Legal Authority

"The essential function of *voir dire*" is "to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel." *United States v. Brown*, 799 F.2d 134, 135 (4th Cir. 1986) (internal quotations omitted). The district court has broad discretion in conducting *voir dire*, *see, e.g.*, *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976), and particularly broad discretion in deciding which specific questions may be asked. *See, e.g.*, *Mu'Min v. Virginia*, 500 U.S. 415, 430 (1991). If an issue is relevant to determining the bias or prejudice of a prospective juror then the question should be permitted. However, jury selection is "not to afford individual analysis in depth to permit a party to choose a jury that fits into some mold that he believes appropriate for his case." *Schlinsky v. United States,* 379 F.2d 735, 738 (1st Cir.), *cert. denied,* 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967).

## Argument

With the addition of a dozen questions, Smith proposes that the Court employ the use of the Jury Questionnaire that this Court used in a prior 2017 RICO trial, *United States v. Jones*, Case No. 7:16CR30026. The additional questions relate to social media, race, and religion.

3

Social Media Related Questions

As part of the Jury Questionnaire, defendant Smith seeks to require perspective jurors to disclose their screen names and user names to their Facebook, Instagram, Twitter, Snapchat, and WhatsApp accounts. Mot. at 2.

The United States does not object to the parties obtaining certain information regarding a prospective juror's social media footprint. The United States believes, however, that access to this information should be limited to only Facebook, Instagram, and Twitter accounts, and the parties be specifically directed by the Court as to what the level of access would be permissible. Passive review of a juror's social media presence without making an "access request" (e.g., making a "Friend" request on Facebook or a "Follow" request on Instagram), which requires contacting a potential juror; where no materials are retained by a party (e.g., copies of a potential juror's Facebook photographs); and where the juror is unaware that his or her electronic social media is being reviewed, may not run afoul an attorney's ethical obligations or cause juror intimidation. But the United States is concerned that instances where an attorney (or someone acting on their behalf) actively requests access to the juror's electronic media, or where the potential juror becomes aware that any attorney is viewing their material, may run afoul of certain ethical rules, including rules prohibiting contact with the venire. *See* Formal Opinion 466, American Bar Association, April 24, 2014. Contact with jurors by attorneys and/or their investigators can also result in juror intimidation or cause bias for or against a party. Any use of social media accounts by parties should also not include any "undercover" or fictional accounts.

4

Race Related Questions

The Supreme Court has not required specific *voir dire* questions except in very limited circumstances, such as in capital cases and cases where racial or ethnic issues are "inextricably bound up with the conduct of the trial" such that inquiry into racial or ethnic prejudice of the jurors is constitutionally mandated. *United States v. Jeffery*, 631 F.3d 669, 673-74 (4th Cir. 2011) (*citing Morgan v. Illinois,* 504 U.S. 719, 739 (1992) and *Rosales-Lopez v. United States,* 451 U.S. 182 (1981) (plurality opinion)). In non-capital cases, where there are no issues of racial or ethnic prejudice within the facts or conduct involved in the case, "the district court need not pursue a specific line of questioning on *voir dire*, provided the *voir dire* as a whole is reasonably sufficient to uncover bias or partiality in the venire." *Id.* (*citing United States v. Lancaster*, 96 F.3d 734 (4th Cir. 1996). Race, of course, can be a legitimate area of inquiry in a case *where race may be a factor*. *See Aldridge v. United States,* 283 U.S. 308 (1931). Race can be a legitimate area of inquiry during *voir dire*, but race need not be an inquiry in every case, especially where, as here, it is not a factor in the case. *See Rosales-Lopez,* 451 U.S. at 193 (a trial judge's decision not to explore the possibility of racial or ethnic prejudice during the *voir dire* constitutes "reversible error only where the circumstances of the case indicate that there is a reasonable possibility that…prejudice might have influenced the jury.").

The Fourth Circuit's opinion in *United States v. Barber* provides insight on the use of race-related *voir dire* questions. In *United States v. Barber*, 80 F.3d 964 (4th Cir. 1996), the defendants, a husband and wife, had been convicted of money laundering cash proceeds from the sale of marijuana. On appeal, the defendants challenged the district court's rejection of their request that *voir dire* of prospective jurors inquire into possible juror prejudice against interracial

5

marriage. *Id.* Although the instant case does not have this same dynamic, the Fourth Circuit upheld the decision and provided guidance on the complications such questions can raise:

> We cannot ignore continuing incidents of racial prejudice that infect the dispensation of justice. Racial prejudice is a persisting malady with deep and complicated historical roots. But every criminal trial cannot be conducted as though race is an issue simply because the trial participants are of different races. If racial prejudice is ever to be eliminated, society's general concerns about such prejudice must not be permitted to erode the courts' efforts to provide impartial trials for the resolution of disputes. Because "[t]here is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups," *Rosales-Lopez*, 451 U.S. 182 at 190, *the courts must begin every trial with the idea of **not** focusing jurors' attention on the participants' membership in those groups*. Particularly because we are a heterogeneous society, courts should not indulge in "the divisive assumption…that justice is a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion." *Ristaino v. Ross*, 424 U.S. 589, 596 n.8 (1976).
>
> Moreover, to seek out generalized prejudices during the *voir dire* would quickly divert the trial's focus from guilt or innocence of the defendant to peripheral factors, such as the defendant's race or religious beliefs, which are usually irrelevant to the merits of the case. The very process of exploring such factors would heighten their role in the decision-making process and tend to subvert the court's express admonition to jurors to convict or acquit only on the evidence before them without partiality to any party.

*Id.*, at 968-69 (emphasis added). Even in *Barber*, where the defendants were an interracial couple, the courts found that race-based questions could be problematic and excluded them from use during *voir dire*. *Id.* at 969 ("Just as the raw fact of skin color is not relevant in determining the objectivity or qualifications of jurors, skin color of defendants is not an appropriate subject about which to inquire of prospective jurors when the sole issue for the jury is whether the defendants are guilty of a [] crime.") (*citing Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

The United States is not aware of any facts in the instant case, and the defendant has not pointed to any in his motion, that would suggest the potential for racial bias to be a feature of the

6

case or that there is a "reasonable possibility" that racial prejudice might influence the jury. The defendants are African-American, the victims and witnesses are African-American, and the communities which were terrorized by the Rollin 60s and Milla Bloods are largely African-American. Additionally, as in the *Barber* case, the charges against the defendant do not involve any element of race, nor is the race of the defendant or any participant an element of a legitimate defense. Moreover, the proof of facts at trial will not introduce race as an issue in the case. *See Barber*, 80 F.3d at 968. Simply put, race is not an issue in this case.

Defendant Smith's proposed race questions best demonstrates why the Supreme Court and Fourth Circuit hesitate to permit race-based questions into non-race-based cases. Here, the defendant proposes inclusion on a Jury Questionnaire the following race-related questions:

- Do you believe that racial prejudice exists in this county today?

- Do you think racial discrimination against Black people is a problem today in Virginia? If so, how serious of a problem to you believe it is?

- In general, do you think our society treats people of all races equally?

- The effects do you think racial or other forms of discrimination have on people who are the targets of discrimination?

- What effect do you think race ethnicity has on the criminal justice system?

- Have you ever been afraid of someone of another race?

- Have you been exposed to persons who have exhibited racial prejudice?

Mot. at 9-10. These questions are complex, strongly imply a "correct" answer, and do not accurately elicit the information the defendant seeks to uncover: whether or not the juror is racist – or, more appropriately for the criminal justice system, whether the jurors' biases will prevent

7

them from being fair and impartial. For example, how is a typical potential juror supposed to answer the question of what effects race discrimination has on victims of discrimination? How is an individual outside of the criminal justice system supposed to answer a question about the effect of race on that system? Scholars far smarter than the attorneys in this case struggle to answer questions such as these. Moreover, these questions imply that there was a racial issue in the case, and since the United States is prosecuting the case, the questions strongly imply that the government acted inappropriately in a race-related way. Such questions infect explosive issues into a case where none exist, and thus are inappropriate. More importantly, defendant Smith (nor any defendant) does not assert any <u>fact</u> in this case that distinguishes it from every other case before this Court in which the defendants are African-Americans, especially any fact, allegation, or legal authority that makes race-based questions appropriate for *voir dire*.

Though the defendant has not raised it explicitly in his motion (although it underpins his proposed race questions), in another filing in *United States v. Marcus Davis, et al.*, case no. 4:18-CR-00011, counsel for defendant Ashley Ross argues that "in a case where Ross (and the other defendants) is Black and most of the prospective jurors will be White, it is important to develop evidence concerning racial bias." Mem. Opp. to U.S. Mot. for an Anon. Jury, ECF No. 404, at 2. This argument has been rejected by the courts. Though defense counsel may question jurors as to their racial attitudes during *voir dire* when "special circumstances" indicate that racial issues are "inextricably bound up with the conduct of the trial," there is no constitutional presumption of juror bias for or against members of any particular racial or ethnic group and hence race questions are inappropriate in standard *voir dire*. *See Rosales-Lopez,* 451 U.S. at 189-90.

8

No one wants a racist on the jury – not the Court, not the defendants, and not the United States, a party who also dedicates significant resources to investigating and prosecuting discrimination in all of its forms. But these proposed questions are simply inappropriate. They are inflammatory. They are impossible to answer. They will turn *voir dire* into a lengthy mini-trial and will result in the exclusion of perfectly appropriate jurors. If the Court agrees with the defendant that the Jury Questionnaire should include race-based questions, the United States asks the Court use a single, neutral question that has already been approved by the Fourth Circuit: Do you harbor any bias or prejudice, racial or otherwise, that would prevent you from being fair to the defendants in this case? *See United States v. Tipton*, 90 F.3d 861, 870-71, 877 (4th Cir. 1996) (upholding trial court's decision to disallow numerous race-based questions; holding that emphasis in *voir dire* should be on "guilt or innocence of defendant," not on "peripheral factors" such as "the racial identities of litigants or witnesses."). Remember, the law does not require a "perfect juror," just a fair and impartial one.

Considering the totality of the circumstances, it cannot be said that racial issues are "inextricably bound up with the conduct of the trial" or that there is a "reasonable possibility" that racial prejudice might influence the jury. Accordingly, the proposed questions as they relate to race are improper.

Religion Related Questions

The defendant proposes inclusion on a Jury Questionnaire the following religion-based questions:

- Do you attend religious services or have you done so in the past?

9

- If yes, please state where you presently attend or where you last attended and state the religious faith, if any, to which you presently belong?

Religion has often been a question of prospective jurors. However, when religion is unrelated to the issue at trial, it is not a proper subject for inquiry. *United States v. Barnes*, 604 F.2d (1979); *United States v. Daily*, 139 F.2d 7 (7th Cir. 1943). As with the issue of race, the United States is not aware of anything in the facts of the instant case, and the defendant has pointed to nothing in his motion, that would suggest any potential for religious bias to be a prominent feature of this case or that there is a "reasonable possibility" that religious issues might influence the jury. In fact, there appears to be no relevance at all between a potential juror's choice of religion and her ability to be a fair and impartial juror. Accordingly, the proposed question as it relates to religion is improper.

## **Conclusion**

WHEREFORE, the United States respectfully requests that defendant Smith's Motion be denied.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

s/Ronald M. Huber
Ronald M. Huber
Heather L. Carlton
Assistant United States Attorneys

Michael J. Newman
Special Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902

10

Tel: 434.293.4283
Ron.huber@usdoj.gov
Heather.carlton@usdoj.gov
newmamj@danvilleva.gov

DATED: April 12, 2019

# **C E R T I F I C A T E**

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk by CM/ECF system, which will send notification of such filing to all counsel of record, on this 12th day of April 2019.

s/Ronald M. Huber
Assistant United States Attorney

11