CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 2 2019

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No.: 4:18-cr-00012 |
| v. | ) |
| | ) |
| MONTEZ LAMAR ALLEN, | ) |
| et al., | ) |
| | ) By: Michael F. Urbanski |
| Defendants. | )     Chief United States District Judge |

## ORDER

This matter is before the court on defendant Montaz Lamar Allen's Motion for the Tender of Specific Brady Material, ECF No. 292, filed on April 4, 2019.[1] The government filed an Opposition to Defendant Allen's Brady Motion, ECF No. 308, on April 15, 2019. The court held a hearing on April 19, 2019 to address this and other motions noticed by the parties. For the reasons set forth below, Allen's motion is **DENIED as moot**.

In his motion, Allen moves the court to enter an order requiring the government to provide information concerning statements (or misstatements) made by Tanashia Coleman, who Allen expects to testify against him at trial. Specifically, Allen requests the government tender for "inspection and copying" any and all evidence and/or information known to be in its possession concerning (1) prior inconsistent statements made by Coleman to law enforcement officers or the prosecutors in this case, (2) any offer of reward or benefit made to Coleman, whether express or implied, in exchange for her cooperation and testimony, and

---

[1] Defendant Jalen Cormarrius Terry joined Allen's motion during the April 19, 2019 hearing.

(3) any other information or material in the possession of the prosecution or its agents that could be used to impeach Coleman should she testify at trial. ECF No. 292, at 2.

Allen anticipates that the government's case against him, to a significant extent, depends on Coleman's testimony, and that the evidence requested above would assist in the impeachment and cross-examination of Coleman. Allen argues that all of Coleman's statements, whether written or recorded, must be disclosed in a timely fashion. This ostensibly includes, but is not limited to, (1) "hand-written notes produced by the investigating officers," (2) "any audio or video recordings produced by the investigating officers," and, (3) "any notes and/or work product produced by the prosecuting attorneys detailing Ms. Coleman's statements." ECF No. 292, at 4. Allen contends that the prosecuting attorneys should also state how many occasions they met with Coleman and provide all their notes detailing those meetings, and that such a request is "reinforced by the Jencks Act (18 U.S.C. § 3500)." Id.

In its opposition brief and during the April 19, 2019 hearing, the government represented that all exculpatory information requested by Allen that is in its possession (or the possession of its investigative team) concerning Coleman has been disclosed. Mindful of its obligations under Brady, the government also acknowledged that it is required to disclose all material evidence favorable—exculpatory or impeaching—to a criminal defendant and commits a Brady violation when it fails to disclose such evidence. The government noted that materials related to Coleman, including copies of videotaped interviews, police reports, handwritten notes (presumably not those belonging to prosecutors, see below), proffer agreements, and a grand jury transcript, were disclosed in folders labeled with her name and

2

organized in subfolders labeled with the appropriate title (e.g., "Interviews"). Considering those disclosures already made, the government asserts that Allen's motion should be denied as moot.

As to Allen's request for prosecutors' notes, the government asserts that it is not obligated to produce such materials under Brady. In addition to asserting that prosecutors' notes are protected from disclosure under the work-product doctrine,[2] the government again represents that any exculpatory information contained in prosecutors' notes is also contained in agents' handwritten notes and/or 302 reports, which were disclosed pursuant to Brady. In response to questioning by the court as to how the government could be certain that all exculpatory information contained in undisclosed prosecutors' notes is reflected in disclosed agents' notes and/or 302s, the government represented that it reviewed these materials to ensure that they capture all exculpatory information before disclosing them to defense counsel. If its review revealed that exculpatory information was inadvertently omitted from these materials, the government indicated that "we make sure we ask[ ] [about] it in the grand jury, so that exculpatory information is frozen, under oath," and later provided to the defendants.

In its opposition brief and during oral argument, the government repeatedly stated that there is nothing in the prosecutors' notes that has not already been disclosed in the form of the agents' handwritten notes and/or typed 302 reports. Given these affirmative

---

[2] This contention touches on an unsettled question of law. See Williamson v. Moore, 221 F.3d 1177 (11th Cir. 2000) ("Neither the Supreme Court nor this court has decided whether Brady requires a prosecutor to turn over his work product."); Dickson v. Quarterman, 462 F.3d 470, 480 n.6 (5th Cir. 2006). But see United States v. Blankenship, No. 5:14-CR-00244, 2015 WL 3687864, at *7 (S.D.W. Va. June 12, 2015) ("To the extent the [d]efendant has separately requested handwritten notes and attorney proffers which fall under Brady, the Court finds that the substance of the same should, of course, be produced. The [g]overnment, however, is not required to produce its work product.").

representations by the government, the court will not order the production of prosecutors' notes at this time. See Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under Brady . . . it is the [prosecuting entity] that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final."); United States v. Milikowsky, 896 F. Supp. 1285, 1307–09 (D. Conn. 1994), aff'd, 65 F.3d 4 (2d Cir. 1995) ("The [d]efendants have provided no basis upon which this Court can distinguish their desire to peruse the prosecutors' notes from that of all other criminal defendants who believe they would benefit from reading the prosecutors' interpretations and descriptions of interviews with unsworn witnesses. Were this Court to grant the [d]efendants' motion, it would set an absurd precedent, allowing defendants to scour the working notes of prosecutors upon the mere accusation that the government has not sufficiently disclosed every potentially exculpatory detail."); see also United States v. Smith, No. 7:17-CR-15-1H, 2017 WL 5760870, at *2 (E.D.N.C. Nov. 28, 2017) (denying, inter alia, defendant's discovery request for Brady material by crediting the government's assertion that it will comply with the applicable rules, Brady, Giglio, and the Jencks Act).

Accordingly, Allen's motion is **DENIED as moot**. Because the need for the materials described in Allen's motion could arise at trial for Jencks Act purposes, the government is **ORDERED** to retain the notes of its agents and prosecutors.

It is **SO ORDERED**.

Entered: 05/02/2019

4

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge