CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 2 2019

JULIA C. DUDLEY, CLERK
BY: /s/ Single
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No.: 4:18-cr-00012 |
| v. | ) |
| | ) |
| MONTEZ LAMAR ALLEN, | ) |
| et al., | ) |
| | ) By: Michael F. Urbanski |
| Defendants. | ) Chief United States District Judge |

## ORDER

This matter is before the court on defendant Montaz Lamar Allen's Motion to Request the Government to Direct Defense Counsel to Exculpatory Evidence Contained in the Discovery Materials, ECF No. 291, filed on April 4, 2019.[1] The government filed an Opposition to Defendant Allen's Motion to Have the United States Identify Exculpatory Information by Bates Number, ECF No. 307, on April 15, 2019. The court held a hearing on April 19, 2019 to address this and other motions noticed by the parties. For the reasons set forth below, Allen's motion is **DENIED**.

In his motion, Allen moves the court for an order directing the government's counsel to identify for his defense team any exculpatory evidence they are aware of, or reasonably should be aware of, contained in the discovery materials provided to date. ECF No. 291, at 1. Allen asserts that the "circumstances of this prosecution place an ethical obligation on . . . counsel for the [g]overnment to identify the plainly exculpatory evidence they are aware of and direct defense counsel to its location within the vast amount of [d]iscovery material they

---

[1] Defendant Jalen Cormarrius Terry joined Allen's motion during the April 19, 2019 hearing.

provided." Id. at 4. Allen notes that there have been eleven (11) discovery productions, over 700 gigabytes of information provided to defense through the Invendica database, including "tens of thousands of Facebook postings, tens of thousands of documents, hundreds if not thousands of audio and video files, hundreds of jail telephone calls and thousands of headache inducing cellular phone data 'dump' files to review." Id. Allen contends that given this voluminous discovery, the government must be required to identify plainly exculpatory evidence and provide its specific location to defense counsel to satisfy its legal obligations under Brady and the "equally important ethical obligation under Rule 3.8(d) [of the Virginia Rules of Professional Conduct]." ECF No. 291, at 4.

In addition to specifically identifying the location of exculpatory information, Allen also requests that counsel for the government "provide a brief written description of the exculpatory evidence and a brief statement on why it is plainly exculpatory." Id. at 5. Lastly, Allen moves the court to set an exculpatory evidence production deadline and require counsel for the government to file a written schedule of all exculpatory material identified for defense counsel by that deadline and make it part of the record. Id.

In its opposition brief, the government contends that the discovery requests described above are unprecedented in nature and "virtually impossible" for it to fulfil given, inter alia, that it "does not segregate exculpatory information into a separate file or keep a running list of exculpatory and impeaching evidence . . . ." ECF No. 307, at 7. The government asserts that it has met its Brady obligations by disclosing all exculpatory information, including all Jencks Act materials, and that Allen cites no authority in support of imposing additional obligations of the sort proposed on the government. The

government notes that its disclosures have been made early (e.g., disclosing over 500 gigabytes of discovery before the scheduling order in this case was entered or a trial date was set) and in an "organized manner" to the Coordinating Discovery Attorney in appropriately labeled folders/subfolders in searchable formats. Id. at 2. The government further notes that it has provided indices for each production where appropriate to assist defense counsel in locating and identifying documents, provided copies of special software to assist in the review of large cellphone data extractions, and disclosed its own work product in certain instances to aid in the review of large Facebook accounts. Finally, the government underscores that not only has it not sought to conceal exculpatory information, but to the contrary, has worked with the Coordinating Discovery Attorney to facilitate use of the Invendica database and "flagged [exculpatory evidence] for the defendants by capturing such evidence in grand jury testimony, in reports, and even in court-filed Statements of Fact." Id. at 4.

In addition to these organizational efforts by the government, the court has retained the services of Russell Aoki to serve as Coordinating Discovery Attorney ("CDA"). As detailed in Mr. Aoki's ex parte status reports to the court, the CDA and his staff have undertaken substantial efforts to organize the government's discovery by setting up a web-based database, remedying myriad technical issues, conducting telephone and in-person training sessions for defense counsel, working to ensure that the voluminous discovery is fully searchable, and generally assisting defense counsel with the management of discovery.

Setting aside the practicality of Allen's motion, the relevant precedent militates against the court's granting his motion. Indeed, the court's survey of the relevant case law

3

revealed a soft consensus among federal courts holding that, except for in extreme circumstances, the government is under no obligation to direct defense counsel or otherwise specifically identify exculpatory evidence. See, e.g., United States v. Perry, No. 2:13CR156, 2014 WL 3955232, at *4 (E.D. Va. Aug. 1, 2014) (holding the Brady obligations do not include "ferret[ing] out" from within a larger subset of disclosed documents "any potentially defense-favorable information from materials that are so disclosed"); United States v. Isaacson, No. 08-20071-CR, 2014 WL 12279429, at *3 (S.D. Fla. Jan. 16, 2014), aff'd, 752 F.3d 1291 (11th Cir. 2014) ("Importantly, '[t]he government's obligation is only to timely provide the defendant with pertinent Brady material. It is not required to inventory or specifically identify favorable evidence for the defense, even when it turns over a large volume of material.'"); United States v. Mmahat, 106 F.3d 89, 94 (5th Cir. 1997) ("[T]here is no authority for the proposition that the government's Brady obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over."), overruled on other grounds by United States v. Estate of Parsons, 367 F.3d 409, 418 (5th Cir. 2004); United States v. Kirk Tang Yuk, 885 F.3d 57, 86–87 (2d Cir.), cert. denied sub nom. Thomas v. United States, 139 S. Ct. 342 (2018), and cert. denied, 139 S. Ct. 342 (2018) ("Nor does Tang Yuk explain why the government should bear the full burden of reviewing and characterizing each document within a voluminous evidentiary record: because the allegedly exculpatory files are images, not text files, government attorneys would have had to characterize and tag each image to create the "organized and searchable" database that Tang Yuk demands . . . ."); United States v. Ohle, No. S3 08 CR 1109 JSR, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), aff'd, 441 F. App'x 798 (2d Cir. 2011) (holding

4

that "as a general rule, the [g]overnment is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); United States v. Runyan, 290 F.3d 223, 246 (5th Cir. 2002) ("The government is not required . . . to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own.").

The court finds no reason to break with the above precedent. While the discovery in this case has been voluminous, there is no evidence that review of said discovery is so unduly onerous on defense counsel as to justify the extraordinary relief requested. In United States v. Skilling, 554 F.3d 529 (5th Cir. 2009), the primary case relied upon by Allen during oral argument, the Fifth Circuit provided several scenarios in which it may be appropriate to require the government to identify the Brady material in discovery that has been produced. The Fifth Circuit stated that if, for example, there was evidence that the government (1) "padded" its production with "pointless or superfluous information to frustrate a defendant's review of the file," (2) created a voluminous file that was "unduly onerous to access," or (3) "otherwise acted in bad faith," then the government's failure to specifically direct the defendant to Brady material may be tantamount to the suppression of that material in violation of Brady. Id. at 576. There is no allegation or evidence of any of the above conduct on the part of the government. Moreover, defense counsel in this case has repeatedly expressed satisfaction with the substantial work being done by the CDA, and with the Invendica database and its electronic search capabilities. Cf. United States v. Cutting, No. 14-CR-00139-SI-1, 2017 WL 132403, at *10 (N.D. Cal. Jan. 12, 2017) (ordering government to identify by Bates number the Brady/Giglio material in the discovery because

5

government's production was not only voluminous, but "its electronic production [was] [ ] marred by technical problems that seriously impede[d] defendants' ability to search the ESI"). For the foregoing reasons, Allen's motion is **DENIED**.

It is **SO ORDERED**.

Entered: 05-02-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

6